SIGNED this 07th day of November, 2007.

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE<br><br>JOEL ALLEN BARFKNECHT AND<br>MARY ELIZABETH BARFKNECHT<br><br>  *DEBTORS*<br><br>AND<br><br>JULIA A. DEMATTIO<br><br>  *DEBTOR* | BANKR. CASE NOS.<br><br>07-51766-LMC<br>CHAPTER 13<br><br><br>07-51359-LMC<br>CHAPTER 13 |

### DECISION ON TRUSTEE'S OBJECTIONS
### TO DEBTORS' PLAN CONFIRMATION

CAME ON for hearing on September 20, 2007 the confirmation of the two foregoing chapter 13 plans. At issue is whether Social Security benefits (including supplemental security income benefits for a disabled person) must be included when calculating a below-median income debtor's projected disposable income for purposes of section 1325(b) of Title 11. If it does not, the next question is whether the benefits should be included anyway, on grounds that not including it

constitutes bad faith under section 1325(a)(3) of Title 11. The issues arose in these cases because the chapter 13 trustee objected to confirmation on both of these grounds. The court concludes that such income is not a component of projected disposable income, and that, at least on these facts, retaining all or part of these benefits while paying less than 100% of general unsecured creditors' claims does not constitute bad faith in proposing the plan. In all events, it is not *per se* bad faith.

**BACKGROUND FACTS**

The facts in these two matters are not in dispute. The Debtors[1] in each case earn income below the median family income benchmark for households of the same size and in the same locality. The Debtors in both cases receive some form of monthly benefits under the Social Security Act. The Debtors each filed an Official Form B22C with their petition and schedules.[2] In each case, the Debtors did not list their monthly Social Security benefits on Form B22C, based on the directions on the form, and based on the express language of section 101(10A) of the Code. However, the Debtors did list Social Security benefits on Schedule I as income, per the directions on that official form. To be sure that the form accurately reflected (at least in the Debtors' view)

---

[1] In one matter, debtors Joel and Mary Barfknecht filed their voluntary chapter 13 petition on July 17, 2007. In the other matter, Julia DeMattio filed her voluntary petition on June 4, 2007. For ease of reference, this court will use the debtors' names when referencing them individually or simply as "the Debtors" when referencing them collectively.

[2] Official Form 22C (or B22C) is a form which tracks the recent 2005 amendments. The title of the form is "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." In addition to calculating current monthly income ("CMI") according to section 101(10A) of the Bankruptcy Code, the form tracks section 1325(b) in determining a debtor's disposable income and applicable commitment period for debtors earning above the median family income for households of the same size in the same locality. However, because the Debtors in these matters earn below the median family income level, the form only calculates the Debtors' CMI according to section 101(10A). For the "amounts reasonably necessary to be expended" (*i.e.,* reasonable expenses), we must look outside Form B22C because that form does not require a debtor earning below the median family income level to complete any portions other than the debtor's current monthly income.

true disposable income, the Debtors in both cases also "backed out" part of that income item as an expense on Schedule J.[3]

The Barfknechts list on their Schedule I a total of $1,759.00 in Social Security benefits received between Mr. Barfknecht and their son. In their initial Schedule J, they listed as an expense $800.00 (attributable to the Social Security benefits) with a notation that the benefits are "not considered income." In the Barfknechts' Amended Schedule J, this figure is reduced to $180.00 (meaning that the Barfknechts decided to provide a larger portion of their benefits to fund their chapter 13 plan).[4]

In the other case before the court, Ms. DeMattio did not list any of her benefits on her initial Schedule I. In her Amended Schedule I, however, Ms. DeMattio did list the $945.00 she receives in Social Security benefits each month, all of which she then "backed out" on Amended Schedule J with the notation that the benefits are "Not Considered Income" (meaning that Ms. DeMattio offers to fund her plan using her monthly wages only, and not any of her Social Security benefits). In each case, the proposed plan offers to use the amount listed as "Monthly net income" in Amended Schedule J to pay unsecured creditors. The Barfknechts, after backing out only $180.00 of their $1,759.00 in benefits, offer $150.00 each month to pay unsecured creditors, and Ms. DeMattio, after

---

[3] This practice, to which the trustee refers as "backing out" the Social Security benefits, has become a common practice among debtors' counsel in the Western District of Texas. The problem seems to be that Social Security benefits are not included, by definition, in the Form B22C's CMI calculation. While Form B22C specifically *excludes* Social Security benefits, Schedule I specifically *includes* Social Security benefits under its own category. To remove doubt that a debtor does not have excess disposable income with which to pay unsecured creditors under a chapter 13 plan, many debtors (as did the Debtors in these cases) list Social Security benefits as a line-item expense or deduction on Schedule J, thus netting no actual disposable income from the Social Security benefits.

[4] A debtor is always allowed to voluntarily commit money or property to fund a plan, even if the debtor is under no legal duty to do so. Thus, for example, a debtor might decide to fund part of a plan with the proceeds from the sale of an exempt asset. We note what the debtors have elected to do here only in the interest of completeness. What is at issue in this case, however, has to do with what the law *requires* them to do, regardless what they may *choose* to do.

backing out all $945.00 of her benefits, offers $290.00 each month to pay unsecured creditors. This payout is less than 100% satisfaction of unsecured indebtedness.

### POSITIONS OF THE PARTIES

The trustee argues that the Debtors are withholding funds that should be treated as "projected disposable income." Thus, says the trustee, these plans cannot be confirmed. *See* 11 U.S.C. § 1325(b)(1)(B). The trustee acknowledges that "disposable income" in this section relies on the expression "current monthly income" (or "CMI"), a defined term in the Code. The trustee also acknowledges that the definition of CMI excludes "benefits received under the Social Security Act." *See id.* §§ 101(10A), 1325(b)(2). However, the trustee argues that the statute also uses the expression "projected disposable income," and *that* expression is *not* defined anywhere in the Bankruptcy Code. The trustee says that the addition of the adjective "projected" means that "disposable income" should be given a different, forward-looking interpretation, such that the definition of disposable income earlier in the section is not binding when construing the phrase "projected disposable income." The trustee's rationale for this conclusion is that the defined phrase "disposable income" refers only to historical figures calculated on the date of the Debtors' petition, while the phrase "*projected* disposable income" necessarily refers to forward-looking figures, thus necessarily unhinging the term from the backward-looking definition of current monthly income. Because Form B22C is not forward-looking, the trustee argues that its calculations should be ignored for purposes of arriving at projected disposable income. Instead, the trustee says that the court should look only to the figures on Schedule I and J, as these forms more accurately depict the Debtors' going-forward projected disposable income for purposes of the "ability to pay" (or "best efforts") test.

The trustee acknowledges that courts trying to arrive at an approach to calculating projected disposable income are not in agreement.[5] Nevertheless, the trustee argues that his approach is the one the court ought to favor, because Schedule I requires debtors to disclose the receipt of Social Security benefits as income, so those benefits must perforce be calculated as part of the Debtors' projected disposable income (and cannot be "backed out" on Schedule J except as that schedule provides).

The Debtors counter that, notwithstanding the forms, and notwithstanding the deluge of recent case law interpretations, the plain language of the statute cannot be ignored. Even assuming that "projected disposable income" is a forward-looking figure, the Debtors emphasize that the phrase nonetheless incorporates a defined term in the Code, and that defined term explicitly excludes Social Security benefits. *In re Kibbe,* 361 B.R. 302 (1st Cir. B.A.P. 2007); *In re Pak,* 357 B.R. 549 (Bankr. N.D. Cal. 2006); *In re Rotunda,* 349 B.R. 324 (Bankr. N.D.N.Y. 2006). Accordingly, say the Debtors, even if the court were inclined to agree with *Hardacre* and its suggestion to look forward when applying the "ability to pay" test per section 1325(b)(1)(B), Social Security benefits

---

[5] The trustee offers, in his brief, "Hanks Seven Schools of Thought" (a case law update presented by Judge Keith Lundin at the National Association of Chapter 13 Trustee's Convention in July 2007). According to these schools of thought, projected disposable income has been calculated the following ways: (1) Schedule I minus Schedule J, *see In re Riggs,* 335 B.R. 649 (Bankr. E.D. Ky. 2007); *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Dew,* 334 B.R. 655 (Bankr. N.D. Ala. 2006); *In re Jass,* 340 B.R. 411 (Bankr. D. Utah 2006); *In re Nowlin,* 366 B.R. 670 (Bankr. S.D. Tex. 2007); (2) Schedule I minus Schedule J, except for Section 101(10A), *see In re Upton,* 363 B.R. 528 (Bankr. S.D. Ohio 2007); (3) CMI is the starting point, *see In re Devilliers,* 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Kibbe,* 361 B.R. 302 (1st Cir. B.A.P. 2007); (4) Presumption that CMI is correct, then Schedule I minus Schedule J, *see In re Slusher,* 359 B.R. 290 (Bankr. D. Nev. 2007); (5) Schedule I minus Section 707(b), *see In re Edmonson,* 363 B.R. 212 (Bankr. N.M. 2007); *In re Carlton,* 362 B.R. 402 (Bankr. C.D. Ill. 2007); (6) CMI minus Schedule J, *see In re Jackson,* 353 B.R. 849 (Bankr. E.D.N.C. 2006); and (7) Strict constructionist, *see In re Quarterman,* 342 B.R. 647 (Bankr. M.D. Fla. 2006); *In re Brady,* 361 B.R. 765 (Bankr. D.N.J. 2007); *In re Kolb,* 366 B.R. 802 (Bankr. S.D. Ohio 2007). While not all of these cases are on point with respect to the issue before this court — the ability to include Social Security benefits — the sheer number of opinions on the matter of calculating projected disposable income published within the last two years certainly seems like it could fill its own volume of the Bankruptcy Reporter. Such diversity in statutory interpretation no doubt stems from the lack of clarity in the statute itself.

are still excluded from income before that analysis even begins and so simply cannot be a part of that discussion.

The trustee has argued in the alternative to this statutory reading argument that the Debtors' refusal to use the benefits to pay creditors who will not be receiving 100% of satisfaction constitutes bad faith, a separate ground for denying confirmation. *See* 11 U.S.C. § 1325(a)(3); *see also In re Upton,* 363 B.R. 528, 536-37 (Bankr. S.D.Ohio 2007) (citing *In re LaSota,* 351 B.R. 56 (Bankr. W.D.N.Y. 2006)). While good faith in proposing a plan is to be reviewed under a "totality of the circumstances" test, one of those circumstances, argues the trustee, ought to be whether the payments proposed to be made under a plan in fact fairly reflect a debtor's real ability to pay compared to the debtor's true projected future revenue. The trustee then points out that if the Barfknechts were to fund their plan with any additional portions of their Social Security benefits, they could pay up to 30% of their unsecured creditors' claims (up from the 2% currently offered). In Ms. DeMattio' case, she could "easily pay 100%" of her unsecured creditors' claims, says the trustee. In short, the trustee argues that following the technical requirements of the Bankruptcy Code does not constitute good faith in proposing a plan if the Debtors are, as a practical matter, still retaining any form of revenue that could be used to pay unsecured creditors.

The Debtors respond to this assertion by noting that good faith in proposing a plan is demonstrated, not by a single factor, but by considering the totality of circumstances. The Debtors assert that they have been honest and forthcoming with the court, and that the trustee does not propose any theory of bad faith other than the Debtors' retention of benefits. In short, the Debtors ask how it could be bad faith to retain benefits which the Bankruptcy Code itself does not consider income. How can it be bad faith to do exactly what the statute expressly permits?

## ANALYSIS

To reiterate, the two issues before this court are: (1) whether benefits received under the Social Security Act must be included in the calculation of projected disposable income for the purposes of the ability to pay test of section 1325(b)(1)(B); and (2) whether the retention of any part of the Social Security benefits while paying less than 100% of unsecured creditors' claims amounts to bad faith in filing a chapter 13 plan under section 1325(a)(3).

Under section 1325(b)(1)(B) of the Bankruptcy Code, a court cannot confirm a chapter 13 plan over a trustee's objection unless the plan provides for the application of all of the "debtor's projected disposable income" to make plan payments. 11 U.S.C. § 1325(b)(1)(B). The phrase "projected disposable income" is not itself defined in the Code, though its component phrase "disposable income" is. Subsection (b)(2) tells us, for purposes of subsection (b), "disposable income" means:

> *[C]urrent monthly income* received by the debtor (*other than . . . disability payments for a dependent child* made in accordance with nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support objection, that first becomes payable after the date the petition is filed . . . ."

*Id.* § 1325(b)(2) (emphasis added). This definition itself incorporates another defined term, "current monthly income." Section 101(10A) says that "current monthly income"

> > (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income . . . and
> > (B) *includes any amount paid by any entity other than the debtor* . . . on a regular basis for the household expenses of the debtor or the debtor's dependents (and

> in a joint case the debtor's spouse if not otherwise a dependent), ***but excludes benefits received under the Social Security Act*** . . . .

11 U.S.C.A. § 101(10A) (emphasis added).  From the plain language of these two definitions, it is clear that neither disposable income nor current monthly income (or "CMI") includes any benefits received under the Social Security Act by a consumer debtor in a bankruptcy case.  Not surprisingly, the drafters of Official Form B22C incorporated an instruction into that form, directing the debtor completing it to exclude Social Security benefits from the calculation of disposable income.  *See* Official Form B22C, Box 9.[6]

However, for any number of reasons, Congress' retention of the adjective "projected" in section 1325(b)(1)(B) without clarifying whether that forward-looking term should somehow alter the now backward-looking definition of "disposable income" in section 1325(b)(2) has created quite a bit of controversy in the courts.[7]  The Fifth Circuit has not yet weighed in on the question, nor has any court from within this district.  Thus, there are no decisions binding on this court.

---

[6] We ought to be able to proceed this far safely and without controversy just attending to the plain meaning of the statute.  Section 101 furnishes definitions for words and terms as they are used in the Code.  When a statute furnishes express definition for words and terms used in the enactment, that definition is usually controlling.  2A NORMAN J. SINGER, STATUTES & STATUTORY CONSTRUCTION § 47:7 at 298-300 n.3 (7th ed. rev. 2007) (collecting cases).  When a statute also states a specific elucidation of a how a term is to be used within a specific section of a statute, that instruction is usually controlling such that a court is not permitted to depart from that statutory direction. *See id.*; *see also Meese v. Keene,* 481 U.S. 465, 484-85, 107 S.Ct. 1862 (1987).  Here, we have a specific directive that, for purposes of section 1325(b), the phrase "disposable income" is to have the meaning and application there supplied.  *See* 11 U.S.C. § 1325(b)(2).  That directive in turn incorporates a specific term itself defined by the Code in its definition section.  *See* 11 U.S.C. § 101(10A).  "Disposable income" thus must exclude Social Security benefits.

[7] Perhaps it is because "projected disposable income" is undefined anywhere in the Bankruptcy Code, while the definition of "disposable income" as amended uses historical figures as of the date of petition, computed mechanically by Form B22C.  Whatever the reason, the fact of the matter is that there are an increasing number of published opinions on the matter since 2005, few of which agree on the proper figures to use in calculating the projected disposable income.  *See supra* note 4 (listing the several published opinions with differing views as to how projected disposable income should be calculated).

*Are Social Security Benefits Included in the Calculation of Projected Disposable Income?*

One of the first decisions to address the conundrum of calculating "projected disposable income" in light of the amended definition of "disposable income" made by BAPCPA was *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006). In *Hardacre*, Judge Russell Nelms ruled that the "plain" language of amended section 1325(b)(1)(B) demonstrated that the term "projected disposable income" must now mean something other than "disposable income" as redefined by BAPCPA. *Id.* at 722-23. The drafters' retention of the additional word "projected" in section 1325(b)(1)(B), says *Hardacre*, indicates that the figure should be forward-looking, even though the phrase "disposable income" found in subsection (b)(2) is now defined as of the date of petition using historical figures. *Id.* Thus, concludes *Hardacre*, projected disposable income "necessarily refers to income that the debtor reasonably expects to receive *during the term of her plan*." *Id.* at 723 (emphasis added).

The trustee relies on this language to infer that *Hardacre* means that courts are free (perhaps even required) to ignore all pre-petition figures and look only to Schedules I and J when calculating the Debtors' *projected* disposable income. In fact, pre-BAPCPA, courts *usually* calculated a debtor's projected disposable income by subtracting the projected reasonable expenses listed on Schedule J from the debtor's estimated projected monthly income reflected on Schedule I, then multiplying that figure by the length of the plan. *See, e.g., In re Kibbe,* 361 B.R. at 307; *In re Killough,* 900 F.2d 61, 64 (5th Cir. 1990). Of course, those pre-BAPCPA decisions did not have to struggle with a definition of "disposable income" that incorporated a new defined term, "current monthly income," as is now the case under BAPCPA. And, of course, those courts were not saddled with a definition of *current* monthly income hitched rather oxymoronically to *historical* pre-petition

-9-

income numbers.[8] The trustee, however, appears to have read more into the *Hardacre* decision than the language of the decision itself will support. Though concluding that projected disposable income must refer to forward-looking data, the *Hardacre* court nonetheless made two points that are important for the matters *sub judice*. First, the court considered the "anomalous results that could occur by strictly adhering to section 101(10A)'s definition of 'current monthly income'" when evaluating projected disposable income. *In re Hardacre,* 328 F.3d at 722. However, even though the court concluded that the word "projected" should require courts to consider forward-looking figures, the court also acknowledged that it could not (and should not) ignore the definition of CMI:

> This does not mean that section 101(10A)'s definition of current monthly income *is irrelevant* to the calculation of projected disposable income. Section 101(10A) continues to apply *inasmuch as it describes the sources of revenue that constitute income, as well as those that do not*.

*Id.* at 723 (emphasis added). This dramatically undercuts the trustee's argument here. Even *Hardacre* would agree that, insofar as what does and what does not constitute "income" for purposes of computing "projected disposable income," a court must be bound by the clear directive in section 101(10A) that current monthly income explicitly *excludes* benefits the debtor receives under the Social Security Act. *See id.*; *see also* 11 U.S.C. § 101(10A)(B).

Notwithstanding this rather clear statement from *Hardacre*, the trustee still insists that the court should ignore the definitions of CMI and disposable income when calculating the Debtors' *projected* disposable income. Absent case law support, however, there is simply no other basis upon

---

[8] It may be that the drafters, in their zeal to assure that debtors not simply "make up" income numbers for their chapter 13 plans, decided to make sure that income was tied to what the debtors were actually making prior to filing. What the drafters failed to anticipate was the relatively common scenario in which it is a loss of job, or a reduction in income that finally thrusts a debtor into chapter 13. Debtors frequently improve their situation after filing (for reasons about which this court has far too little data to speculate), such that the historical income numbers actually *underpredict* a debtor's future ability to perform. Prior to BAPCPA, courts and trustees commonly tested debtors' projections of income, especially when they were overly optimistic. The statute's language unfortunately takes away some of that discretion and generates what is, no doubt, for the drafters an unexpected (and perhaps even unintended) consequence.

which the trustee's argument can find support. Certainly a plain reading of the statute demands that benefits received under the Social Security Act do not count as income for any purposes. The trustee would have to insist that the addition of the adjective "projected" unhinges the remaining two words from their Code-mandated definitions. To do that, the trustee would have to demonstrate that the phrase "projected disposable income" is otherwise rendered meaningless and cannot be reconciled with the remainder of the statute. *See Nat'l Labor Relations Bd. v. Health Care & Retirement Corp. of Am.,* 511 U.S. 571, 579-80, 114 S.Ct. 1778, 1783 (1994). Yet, the *Hardacre* court itself had little difficulty according a sensible reading to the phrase "projected disposable income" *without* having to ignore the Code-mandated definitions of "current monthly income" and "disposable income." *See In re Hardacre,* 338 B.R. at 722. On that point at least, this court agrees with Judge Nelms — it is unnecessary to read "current monthly income" (and its limitations on what counts as income) out of the statute in order to arrive at a sensible reading of the phrase "projected disposable income."[9]

It is more logical to assume, as did *Hardacre*, that the definition of "disposable income" must be the starting point for arriving at a debtor's *projected* disposable income. Congress, after all, is deemed to intend the language used in a particular section. *See In re Hardacre,* 718 B.R. at 723 (quoting *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed. 2d 556 (1993)). While it is this rule of statutory construction which enabled the court in *Hardacre* to read *projected* disposable income as a forward-looking figure, this same rule of statutory construction also forces us to acknowledge that the term must incorporate a debtor's "disposable income" and

---

[9] Though, at this point at least, the court declines to endorse *Hardacre*'s entire treatment of the phrase. There are other difficulties with that court's approach that deserve revisiting at a later date, when an actual dispute over its application is presented to the court. The facts of this case do not present such an opportunity.

whatever limitations engrafted on that definition as a result of its reference to current monthly income as defined in section 101(10A). The trustee cites to no rule of statutory construction that would allow a court to conclude that the very same defined term can mean two entirely different things *within the same subsection* of the statute. The sounder conclusion is that, in calculating *projected* disposable income, we are constrained to begin with the debtor's disposable income as that term is defined for us by Congress in the statute. Thus, we conclude that benefits received under the Social Security Act are not income for the purposes of calculating projected disposable income and cannot be considered as part of the ability to pay test of section 1325(b)(1)(B).

Having resolved this question of the source of projected disposable income, the facts of these cases are otherwise unremarkable. Unlike *In re Hardacre*, there is no dispute as to the accuracy and reasonableness of the Debtors' monthly expenses — save the technical issue of "backing out" all or portions of the Debtors' Social Security benefits from Schedule J.[10] Furthermore, the Debtors in these matters are below-median income households, which precludes a discussion of section 707(b)(2). *See* 11 U.S.C. § 1325(b)(3). Similarly, neither party contends that circumstances have changed since the Debtors filed their respective petitions, precluding a discussion of whether the Debtors' projected disposable income should be any different than their disposable income due to a change in circumstances post-petition. *See In re Kibbe,* 361 B.R. at 314-15. There may be a case in the future in which the parties might dispute the reasonableness of a debtor's claimed expenses. Likewise, there will likely arise a case in the future in which a debtor's circumstances have changed post-petition and pre-confirmation. Until those cases arise, this court declines to address the issue of the proper calculation of projected disposable income in any greater detail than it has addressed

---

[10]In view of the court's ruling that income does not include social security benefits, neither need Schedule J reflect a "balancing" entry to offset the "income" reflected on Schedule I. Both schedules should be amended.

here. The trustee through his objections has raised only the narrow issue whether Social Security benefits must be counted as projected disposable income. This court has answered that question in the negative. An exclusion is an exclusion, whether looking backward or looking forward. That is what the plain meaning of the statute dictates; that is what the court in *Hardacre* correctly recognized; and that is what this court so holds.[11] After excluding the Debtors' Social Security benefits from their income and expense figures, the court concludes that the Debtors' respective plans propose to pay all of their projected disposable income as required by section 1325(b)(1)(B) of the Bankruptcy Code.[12]

### *Good Faith in Proposing the Chapter 13 Plan*

The chapter 13 trustee also objects to the Debtors' plans on the ground that, in his view, they are not proposed in good faith. *See* 11 U.S.C. § 1325(a)(3). This court has considered good faith in the context of chapter 13 plans before, albeit pre-BAPCPA. *See In re McLaughlin,* 217 B.R. 772, 776 (Bankr. W.D. Tex. 1998). While this court has not re-visited the question in the post-BAPCPA context, decisions by other courts within the circuit, as well as at least one unpublished opinion of the Fifth Circuit, indicate that the traditional test employed pre-BAPCPA should still be used today.

---

[11] Lest there be any confusion, the court reiterates that neither of these cases presents the circumstance presented to the court in *Hardacre* — the above-median debtor attempting to "double dip" in calculating her expenses on Form B22C, rendering the figures on that form unreliable. To the contrary, the figures listed on the Debtors' forms in these matters are reliable and undisputed, and this court can discern no reason — as did the court in *Hardacre* — for ignoring such figures.

[12] In fact, the Debtors' respective plans offer to pay *some* money toward the claims of general unsecured creditors even though they have no projected disposable income. The Debtors do this by offering to do what they are *not* required to do by the statute — committing some portion of Social Security benefits or other monies toward their plans. The fact that the Debtors *can* do this, or *choose* to do this, does not mean that they are *obligated* to do this by *fiat* of the addition of the word "projected" to the phrase "disposable income." A debtor may have several independent reasons for volunteering more than is actually required by the Code. *See, e.g., In re Rotunda,* 349 B.R. at 332 (citing *In re Schanuth,* 342 B.R. 601, 606 (Bankr. W.D. Mo. 2006)) ("While the [*Schanuth*] court indicated that it could not compel the debtors to include the Social Security benefits in calculating disposable income, they certainly could voluntarily devote a portion of that income to the plan in order to overcome the feasibility problem.").

*See In re Stanley,* 224 Fed. Appx. 343, 2007 WL 1026423 (5th Cir. Mar. 29, 2007); *In re Charles*, 334 B.R. 207, 217-18 (Bankr. S.D. Tex. 2006) (employing the "totality of circumstances" test); *In re Reinicke,* 338 B.R. 292, 296 (Bankr. N.D. Tex. 2006) (considering several factors like those used in the "totality of circumstances" test). In applying this test, "[t]he trick seems to be not placing too much weight on any single factor, but in the court's looking at how a number of factors in any given case operate together to betray a plan proposed in bad faith." *In re McLaughlin,* 217 B.R. at 775-76 (citing L. Clark & S. Lane, *Having Faith in Good Faith Analysis*, 683 PLI/Comm. 669 (Practicing Law Institute 1994)). This approach comports with the long-held view of the Fifth Circuit that the purpose of the good faith test is to prevent the confirmation of a plan where "the debtor either does not intend to effectuate the plan as proposed or where the proposed plan is for a purpose not permitted under [T]itle 11." *See In re Chaffin,* 816 F.2d 1070, 1074 (5th Cir. 1987) ("*In re Chaffin I*") (quoting S. REP. NO. 150, 97th Cong., 1st Sess. 18 (1981)).

In making the case that failure to devote Social Security benefits toward the plan constitutes bad faith, the trustee points to a few bankruptcy decisions that have held that, notwithstanding the express exclusion of Social Security benefits from disposable income — see discussion *supra* — it demonstrates bad faith for a debtor to accumulate savings over the life of the plan while paying unsecured creditors less than 100%, even though those savings result from the debtor's retention of Social Security benefits. *See, e.g., In re Upton,* 363 B.R. 528, 536-37 (Bankr. S.D. Ohio) (citing *In re LaSota,* 351 B.R. 56 (Bankr. W.D.N.Y. 2006)). In *Upton,* the bankruptcy court based its finding of bad faith on the notion that Congress in BAPCPA left section 1325(a)(3) unaltered, knowing that courts within the Sixth Circuit would consider the debtor's income and surplus as a factor in determining whether a debtor had proposed a chapter 13 plan in good faith. *Id.* at 536. The court

then noted that the debtor's plan did not commit $539 of the debtor's monthly net income (presumably part of the debtor's Social Security benefits) without providing any evidence or justification for reserving that amount. *Id.* at 536-37.[13]

The gist of the trustee's argument rests entirely on the logic of *Upton*. He claims that a debtor cannot retain savings without paying 100% of unsecured creditors' claims, as it demonstrates bad faith in proposing the plan. There are two fundamental flaws with this argument. The first flaw is that the trustee offers what amounts to a *per se* rule that any retention of income (in the macro sense of that term) must of necessity be bad faith. The Fifth Circuit, however, proscribes such a *per se* rule in favor of applying the totality of circumstances test. *See In re Chaffin I,* 816 F.2d at 1074; *see also In re Chaffin,* 836 F.2d 215, 216 (5th Cir. 1988) ("*In re Chaffin II*"). The second flaw in the trustee's position is that the question whether plan payment must include income derived from Social Security benefits is already specifically addressed elsewhere in the Bankruptcy Code. The trustee's proposed reading of the good faith standard would swallow up these other explicit statutory treatments, effectively rendering them nullities. That sort of statutory reading is not permitted. *See Matter of Smith,* 848 F.2d 813, 820-21 (7th Cir. 1988).

We return, then, to the "totality of the circumstances" as traditionally applied in this circuit. *In re Chaffin II,* 836 F.2d at 216 (reversing the bankruptcy court's denial of confirmation and the district court's affirmation "[b]ecause the bankruptcy court in effect found that [a few] factors *per se* constituted bad faith"). The trustee here has not directed the court to any peculiar circumstances in either of these cases demonstrating a lack of good faith. The trustee points only to the issue of

---

[13] The court in *In re Upton* actually did not conclude that the plan was proposed in bad faith. Instead, the court deferred its conclusion to allow the debtor to demonstrate why its retention of benefits should *not* be considered bad faith. *See id.* at 537.

the Debtors' retention of some or all of their Social Security benefits. Even before BAPCPA, such an argument would have failed in the Fifth Circuit. *See id.* The trustee has not demonstrated — or even argued — that the Debtors do not propose these plans with an intent not to effectuate them. Nor has the Trustee demonstrated or argued that the Debtors have proposed these plans for any purpose not permitted by the Bankruptcy Code.[14] After considering the totality of the circumstances with respect to the Debtors, there is no basis for concluding that either of these plans were *not* proposed in good faith. Accepting the trustee's reading of good faith in these two matters would amount to adopting a *per se* rule. That is not permitted in this circuit. *See Chaffin II*, 836 F.2d at 216.

If anything, the enactment of BAPCPA calls into doubt whether a debtor's retention of Social Security benefits may *ever* be a factor to consider under the good faith standard. Several courts have held that, when the Bankruptcy Code specifically addresses a particular issue, the good faith standard should not be expanded to alter the statutory treatment of that issue. *See, e.g., Matter of Smith,* 848 F.2d 813, 820-21 (7th Cir. 1988) ("Since Congress has now dealt with the issue quite specifically in the ability-to-pay provision, there is no longer any reason for the amount of a debtor's payments to be considered as even part of the good faith standard."); *In re Alexander*, 344 B.R. at 752 (agreeing with another court that "the debtor's disposable income must be determined under § 1325(b) and not as an element of good faith under § 1325(a)(3)") (citing *In re Barr,* 341 B.R. at 186 *and* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?,* 13 AM. BANKR. INST. REV. 665, 681 (2005)); *see also In re Rotunda,* 349 B.R. at 333 (denying a chapter 13 trustee's objection based on Congress' policy decision in amending

---

[14] Indeed, in view of the definition of "current monthly income" in section 101(10A), both Debtors have proposed plans that are precisely *consistent* with the provisions of the Code. *See* 11 U.S.C. §§ 101(10A)(B), 1325(b)(2).

section 1325); *see also* 8 COLLIER'S ON BANKRUPTCY ¶ 1325.04[1] (15th ed. 2007). The Bankruptcy Code specifically states that Social Security benefits are excluded as income of the debtor for purposes of satisfying the debtor's ability to pay test. The good faith test in section 1325(a)(3) serves a salutary purpose to be sure — cutting off abuse. But it strikes this court at least as an odd reading of the Code indeed to conclude that a debtor's *following* the Code, without more, could constitute abuse of the bankruptcy process. That sort of over-reading of the good faith standard would allow a court, in the name of good faith, to ignore or overrule whole sections of the Code, an irresponsible approach to statutory construction if ever there was one. *See Nat'l Labor Relations Bd.,* 511 U.S. at 579-80; *see also Miller v. Albright,* 523 U.S. 420, 456, 118 S.Ct. 1428, 1448 (1998) (Scalia, J. concurring). Needless to say, the court declines the trustee's invitation to do so in this case. As there is no other evidence indicating that the Debtors' plans have *not* been proposed in good faith, and the Debtors otherwise have been honest and forthcoming with the court, this court concludes that the plans have been proposed in good faith.

## CONCLUSION

If a certain category of revenue is explicitly excluded from a debtor's "current monthly income" or "disposable income," then the same revenue is not suddenly *included* as "projected disposable income" simply because that phrase is not independently defined in the Bankruptcy Code. While the term "projected disposable income" may be a forward-looking figure, and the recent amendments to the Code have made the term "disposable income" a backward-looking figure, this difference does not make the two terms necessarily irreconcilable – at least not with respect to the issue presented in this case. The plain language of the Code provides that Social Security benefits are to be excluded from the calculation of disposable income. As *Hardacre* teaches, the

underlying definition of current monthly income is relevant to the calculation of projected disposable income inasmuch as the definition describes which sources of revenue are income and which are not. *See In re Hardacre,* 338 B.R. at 723. Thus, for the purposes of determining whether a debtor has proposed a plan paying all of her projected disposable income, Social Security benefits are not to be considered.

In determining whether it may be bad faith to exclude all or part of a debtor's Social Security benefits, a court must consider all facts and circumstances. The Fifth Circuit has long held that such a determination may not be made based upon a single factor. Furthermore, it is doubtful that the good faith analysis may even include a discussion of a debtor's retention of Social Security benefits. However, even assuming *arguendo* that such a factor could be part of the good faith analysis, the trustee has failed to demonstrate any other circumstances portraying these plans as being proposed in bad faith. The trustee argues only that, because the Debtors are retaining some or all of their Social Security benefits while paying less than 100% of unsecured creditors' claims, their plans are *per se* proposed in bad faith. Unfortunately for the trustee, the Fifth Circuit proscribes such a conclusion.

The court overrules the trustee's confirmation objections.

An order consistent with this opinion will be entered on the docket separately.

# # #